

FILED
CLERK, U.S. DISTRICT COURT
OCT 2, 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Orlando Rouchon et al,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>County of Los Angeles et al,<br><br>　　　　Defendant. | 2:18-CV-10029-VAP-MAAx<br><br>**Order GRANTING IN PART and DENYING IN PART Defendants' Motion for Judgment on the Pleadings (Doc. No. 50).** |

Before the Court is Defendants County of Los Angeles ("County"), Gabriela Todmia ("Todmia") and Kimberly Allen's ("Allen") (collectively, "Defendants") Motion for Judgment on the Pleadings (Motion). (Doc. No. 50). The Court has considered the papers filed in support of, in opposition to, the Motion and deems these matters appropriate for resolution without oral argument pursuant to Local Rule 7-15. For the following reasons, the Court rules as follows.

## I. BACKGROUND

### A. Allegations

Plaintiffs Orlando Rouchon ("Rouchon") and Wytasha Justice ("Justice") are the natural parents and share custody of minor Plaintiff J.R.[1] (collectively, "Plaintiffs"). (Doc. No. 14, First Amended Complaint ("FAC") ¶¶

---

[1] Plaintiff J.R. is a minor and is proceeding by and through guardian ad litem Robert Powell. FAC ¶ 2.

9-10). On November 23, 2016, Rouchon called the County of Los Angeles' 211 line to request help finding housing for him and his daughter. *Id.* ¶ 11. At that time, Rouchon and J.R. were residing at a motel. *Id.* ¶ 12. The person who took the call contacted Los Angeles County's Department of Children and Family Services ("DCFS"). *Id.* ¶ 11. That same day, Defendant Todmia, a novice social worker for the County, and law enforcement officers made an unannounced visit to the motel where Rouchon and J.R. were residing. *Id.* ¶12. Todmia and the officers interviewed Rouchon, Justice and J.R., and conducted a visual inspection of J.R. for signs of abuse or neglect. *Id.* ¶¶ 12-13. Todmia found no signs of abuse or neglect and reported that J.R. was "healthy and comfortable" under the care of Rouchon. *Id.* ¶12.

On December 1, 2016, without court order, parental consent, parental knowledge, or parental presence, Todmia went to J.R.'s school, where she seized J.R. from her classroom, detained J.R. against her will, and re-interviewed her. *Id.* ¶¶ 14-15. There had been no further report of child abuse or neglect at the time of this seizure and re-interview. *Id.* ¶ 16. Nevertheless, following the interview, Todmia prepared an application for a warrant to remove J.R. from her parents' care, custody and control. *Id.* ¶ 18. Plaintiffs allege that the application contained numerous misrepresentations of material fact and failed to include critical exculpatory information. *Id.* The application was denied. *Id.*

On December 23, 2016, Todmia then submitted a Juvenile Dependency Petition and Non-Detention Report ("Petition") to the Juvenile

Court to initiate child dependency proceedings as to J.R. *Id.* ¶ 19. The Petition alleged counts under California Welfare & Institutions Code §§ 300(b)(1)–(3), 300(d); and 300(j). *Id.* Plaintiffs allege that the Petition repeated the same misrepresentations that were included in Todmia's warrant application. *Id.* ¶ 18. Defendant Allen, a DCFS social worker, was assigned to J.R.'s dependency matter. *Id.* ¶ 20.

On February 21, 2017, a hearing was held at which Rouchon and Justice were present. *Id.* ¶ 21. At the hearing, the court sustained the Petition as to Cal. Welf. & Inst. Code §§ 300(b)(1)–(3) and § 300(j) but dismissed the allegations under § 300(j) related to sexual abuse. *Id.* The court did not order any forensic interview or physical medical examination of J.R. *Id.* Plaintiffs further allege that the County did not notify or attempt to gain consent from Rouchon or Justice to conduct a forensic interview or physical examination of J.R. *Id.* ¶ 22.

On March 9, 2017, Allen took J.R. to the K.I.D.S. HUB clinic at the Harbor-UCLA Medical Center in Torrance, California. *Id.* ¶ 23. At Allen's request, the clinic performed a forensic interview of J.R. to determine whether she was sexually abused by Rouchon, despite the juvenile court's dismissal of the sexual abuse allegations. *Id.* ¶¶ 23-24. The forensic interview included a full body examination of J.R.'s vagina and anus and use of a colposcope. *Id.* ¶ 27. Neither Rouchon or Justice were informed of, given notice of, or given the opportunity to be present during, J.R.'s examination. *Id.* J.R. made no disclosures of abuse or neglect during the

forensic interview, and the medical examination found no evidence of abuse of any kind. *Id.* ¶¶ 25, 28.

Plaintiffs assert that Todmia and Allen were at all times acting within the course and scope of their duties as DCFS social workers with the County. *Id.* ¶¶ 32, 38, 45, 51, 58, 64. Plaintiffs further assert that the seizure, detention, interviews, and examination of J.R. were conducted pursuant to the County's policies, procedures, customs, and practices, which authorize and encourage social workers to seize, detain, interview, and examine children without court order, parental consent, notice or presence, or exigent circumstances. *Id.* ¶¶ 26, 29, 74.

**B.  Procedural History**

On November 30, 2018, Plaintiffs filed their original complaint against the County, Todmia and Does 1–50. (Doc. No. 1). On February 21, 2019, Plaintiffs filed their operative FAC to name Defendant Allen as Doe 1. FAC ¶ 5. The FAC asserts the following claims for relief:

1. Unlawful detention, questioning and interviewing at school under 42 U.S.C. § 1983, in violation of J.R.'s Fourth Amendment rights (against Todmia and Does 2–50) (Claim One);
2. Unlawful detention, questioning and interviewing at school under 42 U.S.C. § 1983, in violation of Plaintiffs' First and Fourteenth Amendment rights (against Todmia and Does 2–50) (Claim Two);

3. Unlawful detention, questioning and forensic interview under 42 U.S.C. § 1983, in violation of J.R.'s Fourth Amendment rights (against Allen and Does 2–50) (Claim Three);

4. Unlawful detention, questioning and forensic interview under 42 U.S.C. § 1983, in violation of Plaintiffs' First and Fourteenth Amendment rights (against Allen and Does 2–50) (Claim Four);

5. Unlawful medical procedures, including examinations, under 42 U.S.C. § 1983, in violation of J.R.'s Fourth Amendment rights (against Allen and Does 2–50) (Claim Five);

6. Unlawful medical procedures, including examinations, 42 U.S.C. § 1983, in violation of Plaintiffs' First and Fourteenth Amendment rights (against Allen and Does 2–50) (Claim Six);

7. *Monell* Liability (against the County) (Claim Seven); and

8. Injunctive Relief (against all Defendants) (Claim Eight)

*See* FAC, Doc. No. 14.

On March 21, 2019, Defendants filed their Answer to Plaintiffs' FAC. (Doc. No. 30).  On August 5, 2019, Defendants filed the instant Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).  (Doc. No. 50). Plaintiffs filed an opposition on August 19, 2019 (Doc. No. 51), and Defendants replied on August 26, 2019.  (Doc. No. 52).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed, but early enough not to delay trial, a party may move

for judgment on the pleadings."  "Although [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] establishes the standard for deciding a Rule 12(b)(6) motion ... Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and ... 'the same standard of review' applies to motions brought under either rule."  *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

"A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."  *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).  The Court must assume the truthfulness of all material facts alleged and construe all inferences reasonably to be drawn from the facts in favor of the responding party.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

To prevail on a Rule 12(c) motion, the moving party bears the burden to demonstrate that (1) "no material issue of fact remains to be resolved" and (2) "he is entitled to judgment as a matter of law."  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).  Judgment on the pleadings is improper if the Court is required to go "beyond the pleadings to resolve an issue."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

### III.     ANALYSIS

Defendants move for partial judgment on the pleadings as to Plaintiffs' *Monell* claim against the County (Claim Seven); Plaintiffs' First Amendment claims against Todmia and Allen (Claims Two, Four and Six); and Plaintiff's claim for injunctive relief (Claim Eight).[2]  The Court evaluates each of Defendants' arguments in turn, below.

### A.    Plaintiffs' First Amendment Claims (Claims Two, Four & Six)

Plaintiffs assert liability under 42 U.S.C. 1983 against Defendants Todmia and Allen based on constitutional violations of the First, Fourth and Fourteenth Amendments.  Defendants do not challenge Plaintiffs' Fourth or Fourteenth Amendment claims.  Rather, Defendants move for judgment on the pleadings only as to Plaintiffs' First Amendment allegations against Todmia (Claim Two) and Allen (Claims Four and Six).  *See* Motion at 28-31.  As to these claims, Plaintiffs allege that Todmia and Allen violated Plaintiffs' First Amendment right to be free from the unjustified interference with their familiar relationship.  FAC ¶¶ 41, 54, 70.

The Supreme Court has noted that protected First Amendment associational activity shields two distinct types of association: "expressive association" and "intimate association."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).  According to Defendants, Plaintiffs allege a First

---

[2] In their FAC, Plaintiffs allege conspiracy claims against Defendants Allen and Todmia, in violation of 42 U.S.C. § 1983 and § 1985.  FAC ¶¶ 34, 41, 47, 54, 60, 70.  Defendants moved for judgment on the pleadings as to Plaintiffs' conspiracy claims.  Motion at 31-33.  The Court need not address these claims, as Plaintiffs agreed to dismiss their conspiracy claims.  (Doc. No. 51 at 1, fn. 1).

Amendment "expressive association" claim.  Motion at 30-31.  In response, Plaintiffs clarify that their First Amendment claim is based on "intimate association."  (Doc. No. 51 at 4-5).  The Court finds that Plaintiffs' allegations clearly relate to a First Amendment "intimate association" claim. Indeed, the crux of Plaintiffs' First Amendment allegations is that Todmia and Allen interfered with Rouchon's and Justice's relationship with J.R., their child.  Thus, the Court finds Defendants' arguments based on "expressive association" misplaced.  Rather, the issue here is whether Plaintiffs have sufficiently alleged a First Amendment "intimate association" claim to survive dismissal.

The Ninth Circuit addressed "the constitutional right to familial association" in the context of a parent-child relationship and a hospital's refusal to release the latter.  *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018).  Relevant here, the Ninth Circuit reiterated the well-established principle that the First Amendment protects "family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."  *Id.* (quoting *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001)) (second internal quotation marks and citation omitted).  The Supreme Court articulated this right over thirty years ago in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), which found that protecting intimate relations "from unwarranted state interference" was necessary to safeguard "the ability independently to define one's identity that is central to the concept of liberty."  *Id.* at 619.  Shortly thereafter, the Supreme Court reconfirmed that

"the First Amendment protects ... family relationships." *Board of Dirs. v. Rotary Club*, 481 U.S. 537, 545 (1987). In light of this and other case law, the Ninth Circuit in *Keates* acknowledged, "we have held that claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." *Keates*, 883 F.3d at 1236 (citing *Lee*, 250 F.3d at 686).

Here, Plaintiffs allege that Rouchon and Justice are J.R.'s natural parents. FAC ¶¶ 9-10. This establishes the requisite intimate relationship (i.e., parent-child). *See Keates*, 883 F.3d at 1235. As to "unwarranted interference," Plaintiffs allege that Todmia interfered with the parents' right to the care, custody and control of their daughter when Todmia seized J.R. from her classroom without parental consent, knowledge or presence. FAC ¶¶ 14, 39. Accepting Plaintiffs' allegations as true, this seizure resulted in the removal and detention of J.R. from her parents' care, FAC ¶ 18, which is undoubtedly an unwarranted interference between a parent and child. Next, Plaintiff alleges that Allen interfered with Rouchon and Justice's First Amendment familiar associational rights by submitting J.R. to a forensic interview and medical examination. FAC ¶ 24. As the Ninth Circuit explained, the interest in family association is particularly compelling while children are undergoing medical examinations, noting that a need to make medical decisions could arise and a family's right to be together during difficult and traumatic events. *See Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000). Therefore, the Court finds Plaintiffs' allegations sufficient to support a First Amendment claim against Todmia and Allen.

Accordingly, the Court **DENIES** Defendants' motion for partial judgment on the pleadings as to Claims Two, Four and Six.

### B. *Monell* Liability (Claim Seven)

In *Monell*, the Supreme Court held that "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To plead a *Monell* claim, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Three distinct theories may support a *Monell* claim: (1) ratification; (2) inadequate training; and (3) unconstitutional custom, practice, or policy. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010). Here, Plaintiffs allege their *Monell* claim based the County's purported unconstitutional customs, practices and policies. FAC ¶¶ 73-78. To establish liability under this theory, Plaintiffs must show the following: (1) that they possessed a constitutional right of which they were deprived; (2) that the County had a policy; (3) that this policy amounts to deliberate indifference of Plaintiffs' constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Municipal liability arising out of unconstitutional municipal custom or policy must be "the result of a longstanding practice or custom which constitutes standard operating procedure of the local government entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Here, Plaintiffs allege that the County, through DCFS, had established policies, procedures, customs and/or practices that violated Plaintiffs' First, Fourth and Fourteenth Amendments. FAC ¶ 74. Specifically, Plaintiffs allege that the County implemented the following unconstitutional policies:

> (1) a policy of detaining children from their parents without exigent circumstances, court order and/or consent of their parent; (2) a policy of causing minor children to be seized and interviewed at school without court order, parental consent, parental knowledge, parental presence, exigent circumstances or probable cause; (3) a policy of not allowing children and parents to have a parent present at their minor's school interview; (4) a policy of causing minor children to be seized and forensically interviewed without court order, parental consent, parental knowledge, parental presence, exigent circumstances and without just and reasonable cause; (5) a policy of not allowing children and parents to have a parent present, or nearby, at their minor child's forensic interview; (6) a policy of causing medical examinations, treatment and/or procedures of a minor child without the knowledge, consent, presence and/or authorization of the parent(s) or legal guardians, and without exigency, without medical need or urgency, and without valid court order; (7) a policy of not allowing children and parents to have a parent present at their minor child's medical procedures and/or treatment; and (8) a policy of obtaining, and using, orders for examination of children without due process of law.

FAC ¶ 74.

Even accepting these allegations as true, Plaintiffs do not sufficiently allege a custom, policy, or practice, because Plaintiffs do not allege any other instances of the asserted violations by Defendants, beyond the alleged violations that Plaintiffs claim to have experience themselves. *See Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee."); *AE ex rel. Hernandez*, 666 F.3d at 637 ("a single occurrence of any supposed violation does not constitute a policy or custom within the meaning of *Monell*[.]"); *see also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1096 (E.D. Cal. 2012) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)) ("A longstanding practice or custom is one that is so 'persistent and widespread' that it constitutes a 'permanent and well settled' governmental policy."); *Gillette*, 979 F.2d at 1349 ("A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."). Therefore, Plaintiffs fail to allege their *Monell* claim sufficiently.

Accordingly, the Court **GRANTS** Defendants' Motion as to Claim Seven without prejudice.

### C. Injunctive Relief (Claim Eight)

Plaintiffs include a claim in their FAC for "Injunctive Relief" against all Defendants as a separate cause of action. FAC 79-84. Injunctive relief is a remedy, not a cause of action. *See Hafiz v. Greenpoint Mortgage Funding,*

Inc., 652 F.Supp.2d 1039, 1049 (N.D. Cal.2009) ("Injunctive relief is a remedy which must rely upon underlying claims."); *see also Valley Surgical Ctr. LLC v. Cty. of Los Angeles*, 2015 WL 3825310, at *8 (C.D. Cal. June 18, 2015). Accordingly, the Court **GRANTS** Defendants' Motion as to Claim Eight.[3]

### IV.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings.

**IT IS SO ORDERED.**

Dated:   10/2/19

Virginia A. Phillips
Chief United States District Judge

---

[3] The Court notes, however, that this does not limit Plaintiffs' ability to obtain injunctive relief should the Court consider injunctive relief proper.